Susan Mary Rotkis, AZBAR 032866
Price Law Group, APC
2290 East Speedway Blvd.
Tucson, Arizona 85719
T: (818) 600-5506
F: (818) 600-5406
E: susan@pricelawgroup.com

DHF Law, APC
Devin H. Fok, Esq. (SBN 256599)*
devin@devinfoklaw.com
2304 Huntington Drive, Suite 210
San Marino, CA 91108
Ph: (888) 651-6411
Fax: (818) 484-2023
*pending pro hac vice admission

*Attorneys for Plaintiff and the Proposed Class*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA
TUCSON DIVISION**

| | |
|---|---|
| Tracie Ann Grijalva, *individually and on behalf of persons similarly situated,*<br><br>Plaintiff,<br><br>v.<br><br>ADP Screening and Selection Services, Inc., a Colorado Corporation; and Does 1-10,<br><br>Defendants. | No.<br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FAIR CREDIT REPORTING ACT, 15 U.S.C §1681 ET SEQ.**<br><br>**JURY TRIAL DEMANDED** |

    Plaintiff Tracie Ann Grijalva files this Original Class Action Complaint on behalf of herself and persons similarly situated and in support of her claims alleges

as follows:

## I. INTRODUCTION

1. Recognizing that accurate background-check screening reports are essential to millions of Americans applying for jobs, credit, and housing, Congress has chosen to regulate the accuracy of and procedures for preparing these reports through the Fair Credit Reporting Act ("FCRA").

2. Defendant ADP Screening and Selection Services, Inc. ("ADP"), a consumer reporting agency, has systematically and willfully violated FCRA by making consumer reports that contain adverse information which antedates the report by more than seven years. 15 U.S.C. § 1681c(a)(5). By disclosing adverse information that predates the report by more than seven years, ADP obstructs subjects from obtaining employment.

3. Based on ADP's systematic and willful FCRA violation, Plaintiff asserts FCRA claims on her own behalf and on behalf of a Class of similarly situated people who were the subjects of reports containing adverse information that antedate the report by more than seven years. Plaintiff seeks actual damages, statutory damages, injunctive relief to improve the accuracy of ADP's reporting practices, punitive damages, attorneys' fees, costs and expenses of suit, and all other appropriate relief.

## II. PARTIES

4. Plaintiff Tracie Ann Grijalva is and at all relevant times has been a resident of Maricopa County, Arizona.

5. Defendant ADP Screening and Selection Services, Inc. (ADP) is a Colorado corporation whose headquarters are in the State of New Jersey.

6. ADP is registered and in good standing with the Arizona Corporation Commission.

7. Defendant ADP's parent company, ADP, Inc., has a brick and mortar office in Tucson, Arizona, where it regularly provides ADP background screening services in Arizona as part of ADP, Inc.'s services.

## III. JURISDICTION AND VENUE

8. This Court has federal question jurisdiction because this action arises out of violations of federal law. 28 U.S.C. § 1331, 15 U.S.C. § 1681p (FCRA) (permitting actions to enforce liability in an appropriate United States District Court).

9. Venue in the District of Arizona is proper pursuant to 28 U.S.C. § 1391 because Defendants regularly transact business within this District, is otherwise subject to personal jurisdiction in this District, and a substantial part of the events giving rise to the claims occurred in this District and Division.

**A. Factual Allegations**

10. On or about April 30, 2020, The Results Company ("Company") ordered a background-check report regarding Ms. Grijalva from ADP.

11. Ms. Grijalva had been employed full-time with Company at an hourly rate of $14.00 with a 401(k) and full dental, vision and health benefits.

12. After assembling and evaluating information regarding Ms. Grijalva, ADP reported to Company a "hit" from its governmental registries search that Ms. Grijalva's nurses/nurse's aide license was revoked or suspended on July 20, 2011, pursuant to section 1128(b)(4) of the Social Security Act. As a result, Company terminated Ms. Grijalva.

13. Revocation or suspension of a license clearly constitutes an adverse item of information and the disposition date antedates the report by more than seven years in violation of the FCRA. ADP could have had systems in place to prevent this item from being disclosed to Company.

14. In addition, ADP could have trained its employees to review reports for such time-determinant items of information.

15. Company paid ADP a fee for the report.

16. ADP used means and facilities of interstate commerce for the purpose of preparing and furnishing this consumer report, including but not limited to the internet, interstate telephone services, and interstate mail delivery services.

17. As a result of ADP's furnishing this inaccurate and misleading report

to Company, Ms. Grijalva suffered injuries, including: (1) injuries to her statutorily protected reputational rights; (2) loss of her employment at Company; and (3) emotional distress.

## IV. CLASS ALLEGATIONS
### A. FCRA regulates the reporting of adverse information older than seven (7) years to protect consumers.

18. Background-check screening accuracy is crucial to the U.S. labor market. According to a 2018 survey, 95% of employers conduct one or more types of background screening; and 94% of those include some form of criminal history check. Consumer Financial Protection Bureau, *Market Snapshot: Background Screening Reports. Criminal Background Checks in Employment* 4 (October 2019).[1] An inaccurate or misleading criminal history report can derail job offers, leaving job-seekers unemployed for significant periods of time. *See Williams v. First Advantage LNS Screening Solutions, Inc.*, 238 F. Supp. 3d 1333, 1341–42 (N.D. Fla. 2017), *aff'd in part* 947 F.3d 735 (inaccurate First Advantage background check reports caused plaintiff to lose two job offers, leaving him unemployed for several months).

19. Recognizing that the accuracy of background-check reports can have a significant impact on people's lives, Congress has chosen to regulate the

---

[1] *Available at* https://files.consumerfinance.gov/f/documents/201909_cfpb_market-snapshot-background-screening_report.pdf.

procurement, use, and content of those reports through the FCRA, 15 U.S.C. §§ 1681a, *et seq.* The FCRA is intended "to protect consumers from the transmission of inaccurate information about them, and to establish credit reporting practices that utilize accurate, relevant, and current information in a confidential and responsible manner." *Cortez v. Trans Union LLC*, 617 F.3d 688, 706 (3d Cir. 2010).

20. Defendant ADP is a consumer reporting agency ("CRA") subject to FCRA because it is a "person which, for monetary fees … regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports." 15 U.S.C. § 1681a(f).

21. ADP is a subsidiary of ADP, Inc. and one of the largest background-check screening companies in the United States. As of 2021, ADP, Inc.'s total revenue totaled $15.005 billion, *US SEC Annual Report* 3, 47 (June 30, 2021)[2]. ADP, Inc. operates in 140 locations and has over 920,000 clients worldwide[3].

22. A "consumer" is defined in FCRA as "an individual." 15 U.S.C. §

---

[2] *Available at* https://d18rn0p25nwr6d.cloudfront.net/CIK-0000008670/59021d30-bd32-4bc9-b592-52f941cf3d1d.pdf
[3] *See* https://d18rn0p25nwr6d.cloudfront.net/CIK-0000008670/59021d30-bd32-4bc9-b592-52f941cf3d1d.pdf

1681a(c). A "consumer report" is "any written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for … employment." 15 U.S.C. § 1681a(d).

23. ADP prepares background check reports by assembling and evaluating information regarding individuals' criminal histories and sells these reports to, among others, prospective employers. ADP uses means and facilities of interstate commerce to prepare and furnish these reports, including but not limited to the internet, interstate telephone services, and interstate mail delivery services. ADP's reports are therefore governed by FCRA.

24. In enacting FCRA, Congress determined that consumers' rights to have accurate information reported about their backgrounds and criminal histories—which has long been protected by the common-law torts of libel, defamation, and slander—merits additional, stricter statutory protections in the background-check reporting context. A person's reputation as reflected in his or her background-check report is vitally important to securing and maintaining employment and housing, as well as generally maintaining good reputation in the community. Inaccurate, adverse, or derogatory information on a background-check report invades

consumers' statutory reputational rights and puts them at risk of being denied employment, housing, credit, or insurance.

25. To achieve its goals, Congress has required that CRAs not make a background-check report containing "any [ ] adverse item of information, other than records of convictions of crimes which antedates the report by more than seven years." 15 U.S.C. § 1681c(a)(5).

26. In Ms. Grijalva's case, however, ADP reported the results of its database searches without excluding adverse information which antedates the report by more than seven years.

27. Similarly in reports it prepared and furnished regarding Class members, ADP also failed to exclude adverse information that antedates the report by more than seven years.

28. ADP's unlawful reporting of public records has injured Ms. Grijalva and the Class members by depriving them of their statutorily protected reputational rights, exposed them to the risk that they might be denied a job, housing, credit, or insurance, and caused injuries, including loss of income, loss of time and expenses incurred to correct inaccurate reporting, and/or emotional distress.

**B.     ADP willfully violated FCRA.**

29. As the plain language of the statute makes clear, and court decisions as well as federal government agency statements and enforcement actions have

confirmed, including adverse information antedating the report by more than seven years constitutes an FCRA violation.

30.  In *Haley v. TalentWise, Inc.*, 9 F. Supp. 3d 1188 (W.D. Wash. 2014), the Western District of Washington held that "consumer reports included dismissed charges antedating the report by more than seven years" stated a claim for willful violation of FCRA, 15 U.S.C. § 1681c(a)(5).

31.  Similarly, the Northern District of Illinois has held that allegations that the defendant disclosed dismissed charges that antedated the report by more than seven years, "are sufficient to allege a knowing or reckless violation of the FCRA, which are required for a finding of willfulness." *See Avila v. NOW Health Grp., Inc.*, No. 14 C 1551, 2014 WL 3537825, at *3 (N.D. Ill. July 17, 2014).

32.  Accordingly, ADP had notice of what is already clear from an objective reading of the statutory text: adverse information antedating the report by more than seven years is prohibited from being disclosed. ADP's FCRA violations were therefore willful, subjecting ADP to liability for statutory and punitive damages under 15 U.S.C. § 1681n.

**C.   The Class**

33.  Plaintiff brings this action on her own behalf and as a class action pursuant to Federal Rule of Civil Procedure 23(b)(3) for the following Class:

> All natural persons residing in the United States (including all territories and other political subdivisions of the United States) who

were the subjects of background check reports which (1) ADP furnished to third parties from five years before the filing of this Complaint to the final resolution of this action and which (2) included adverse item of information, other than records of convictions of crimes, which antedates the report by more than seven years.

Excluded from the Class are any employees, officers, or directors of First Advantage, any attorneys appearing in this case, and any judges assigned to hear this case as well as their immediate family and staff.

34. **Ascertainability.** The Class is ascertainable in that it comprises individuals who can be identified by reference to purely objective criteria, including information from consumer report files in ADP's business records. Notice may be mailed to Class members using the information in ADP's files, as updated through the National Change of Address Registry and other commercially available means.

35. **Numerosity.** The Class is so numerous that joinder of all members is impracticable. Although the precise number of Class members is not currently known, ADP's large size and the systematic operations shows that the Class likely consists of at least thousands of persons and, therefore, it would be impracticable to bring all these persons before the Court as individual plaintiffs.

36. **Typicality.** Plaintiff Tracie Grijalva's claims are typical of the claims of each Class member she seeks to represent because these claims all arise from the same operative facts and are based on the same legal theories.

37. **Adequacy.** Plaintiff will fairly and adequately protect the Class's interests. Plaintiff is committed to vigorously litigating this matter, and her interests

are aligned with those of the Class. Plaintiff has retained counsel experienced in handling FCRA and consumer class actions.

38. **Commonality and Predominance.** Common issues of law and fact exist regarding Plaintiff's and the Class members' claims and predominate over any non-common issues. The common issues include:

(a) whether ADP furnished consumer reports regarding Plaintiff and the Class members to third parties containing adverse item of information, other than records of convictions of crimes, which antedates the report by more than seven years;

(b) whether ADP violated 15 U.S.C. section 1681c(a)(5) by issuing reports containing adverse item of information, other than records of convictions of crimes, which antedates the report by more than seven years;

(c) whether ADP's failure to comply with FCRA was willful;

(d) whether Plaintiff and the Class members are entitled to statutory damages and/or punitive damages.

39. **Superiority.** A class action is a superior method for the fair and efficient adjudication of this controversy. The interests of Class members in individually controlling the prosecution of separate claims against ADP is small, as actual damages would be difficult and expensive to prove and the maximum statutory damages recoverable by any one Class member is limited to $1,000 under FCRA. Management of the Class's claims in a single proceeding will avoid inconsistent judgments and result in a more efficient use of judicial resources than resolving these same issues in many individual cases.

40. **Injunctive Relief Appropriate to the Class. Fed. R. Civ. P. 23(b)(2).** This action should also be maintained as a class action because ADP has acted or refused to act on grounds that apply generally to the Class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the Class as a whole.

### V.   CLAIMS FOR RELIEF

### COUNT ONE - 15 U.S.C. § 1681c(a)(5)

41. Plaintiff incorporates the foregoing allegations by reference as though fully restated here.

42. ADP is a consumer reporting agency subject to the FCRA, 15 U.S.C. § 1681 *et seq.*, because it regularly assembles and evaluates information on consumers for the purpose of furnishing consumer reports to third parties and uses means and facilities of interstate commerce to prepare and furnish its reports.

43. ADP furnished employment consumer reports, also known as background reports or background checks, regarding Plaintiff and the Class members to third parties.

44. ADP disclosed adverse information about the Plaintiff that predated the report by seven years.

45. Such a violation was obvious and easily detectable, as one would expect that the communication of the history of Plaintiff's professional license being

suspended would be viewed negatively by users of ADP's reports.

46.     ADP willfully violated FCRA because its reporting of an outdated record was prohibited in light of FCRA's plain statutory language, court decisions, and actions and statements by government enforcement agencies putting ADP on notice that reporting of outdated adverse information violates FCRA.

47.     As a result of ADP's misleading reporting, Plaintiff and the Class members suffered injuries to their statutorily protected reputational rights, economic injuries, and/or emotional distress, as well as being exposed to the increased risk that they might be denied a job, housing, credit, or insurance, based on the obsolete information contained in the ADP employment purposed consumer reports.

48.     In redress for ADP's FCRA violations, Plaintiff and the Class members are entitled to actual damages, statutory damages, punitive damages, declaratory and injunctive relief, as well as attorneys' fees and costs.

## VI.     PRAYER FOR RELIF

Wherefore, Plaintiff, individually and on behalf of others similarly situated, prays for relief as follows:

1. An order certifying the Class pursuant to Federal Rule of Civil Procedure 23(b)(3) and/or 23(b)(2), appointing Plaintiff as Class Representative, and appointing her Counsel as Class Counsel;

2. A declaration that ADP's practices violate the FCRA, 15 U.S.C. § 1681

*et seq.*;

3. Judgment awarding Plaintiff and the Class members actual damages pursuant to 15 U.S.C. § 1681o and statutory and punitive damages pursuant to 15 U.S.C. § 1681n;

4. An injunction prohibiting ADP from further FCRA violations;

5. Pre-judgment and post-judgment interest;

6. Attorneys' fees, expenses, and costs of suit pursuant to 15 U.S.C. §§ 1681n and 1681o(a)(2), the common fund theory, or any other applicable statute, theory, or contract;

7. Leave to amend the Complaint to conform to the evidence produced at trial; and

8. Such other relief as this Court may deem just and proper.

### VII.   JURY DEMAND

Plaintiff demands a jury trial on all issues so triable.

/s/ Susan M Rotkis
Susan Mary Rotkis, AZBAR 032866
Price Law Group, APC
2290 East Speedway Blvd.
Tucson, Arizona 85719
T: (818) 600-5506
F: (818) 600-5406
E: susan@pricelawgroup.com

DHF Law, APC
Devin H. Fok, Esq. (SBN 256599)*
devin@devinfoklaw.com

|   |   |
|---|---|
| 1 | |
| 2 | 2304 Huntington Drive, Suite 210 |
|   | San Marino, CA 91108 |
| 3 | Ph: (888) 651-6411 |
|   | Fax: (818) 484-2023 |
| 4 | *pending pro hac vice admission* |
| 5 | |
|   | *Attorneys for Plaintiff and the* |
| 6 | *Proposed Class* |