**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Tracie Ann Grijalva,<br><br>   Plaintiff,<br><br>v.<br><br>ADP Screening and Selection Services Incorporated, et al.,<br><br>   Defendants. | No. CV-22-00206-TUC-JCH<br><br>**ORDER** |

In this case, Plaintiff alleges Defendant violated the federal Fair Credit Reporting Act ("FCRA") when Defendant reported that Plaintiff is excluded from participating in federal healthcare programs. Doc. 1; *see also* Doc. 26 (seeking class certification). Plaintiff interprets the FCRA to prohibit reporting her exclusion, which began more than seven years before Defendant reported it. *See generally* Doc. 27. Defendant interprets the FCRA to permit reporting Plaintiff's exclusion because it was "active and ongoing" when Defendant reported it. *See generally* Doc. 25. The issues are fully briefed, Docs. 30, 33, 41, and 43, and the parties' request for oral argument is denied because it would not aid the Court's decision. Fed. R. Civ. P. 78(b).

The Court will grant summary judgment for Defendant and deny summary judgment for Plaintiff. On an issue of first impression, Defendant's interpretation of the FCRA is persuasive and objectively reasonable. No disputed facts remain for a jury to decide, and Defendant is entitled to judgment as a matter of law.

///

## I. Background

The material facts are not disputed. *See* Doc. 25 at 6; Doc. 33 at 3. The United States Department of Health and Human Services ("HHS") Inspector General may exclude individuals from participating in federally funded health care programs. Doc. 24 ¶ 1; Doc. 34 ¶ 1; *see also* 42 U.S.C. §§ 1320a-7, 1320c-5. Excluded individuals appear on a publicly accessible list on the HHS website (the "HHS List"). Doc. 24 ¶ 2; Doc. 34 ¶ 2. The same individuals may also appear on a list maintained by the Government Services Agency (the "System for Award Management" or "SAM" List). Doc. 24 ¶¶ 4, 5; Doc. 34 ¶¶ 4, 5. The SAM List derives from the HHS List, Doc. 33 at 9, but the two lists display slightly different information. *See* Doc. 27-4 at 4.[1]

In 2011, the Arizona State Board of Nursing revoked Plaintiff's nursing license after she accepted money from a client with dementia. Doc. 27-1 ¶¶ 1–2; Doc. 30 ¶¶ 1–2. A few months later, the HHS Inspector General excluded Plaintiff from participating in federally funded healthcare programs, and Plaintiff was added to the HHS List and SAM List. *See* Doc. 27-1 ¶ 4; Doc. 30 ¶ 4; Doc. 24 ¶¶ 11, 12; Doc. 34 ¶¶ 11, 12.

In 2020, a prospective employer hired Plaintiff contingent on her passing a background screening report. Doc. 27-1 ¶ 8; Doc. 30 ¶ 8. Defendant produced that report. Doc. 24 ¶ 16; Doc. 34 ¶ 16. Defendant's report contained HHS List and SAM List results showing Plaintiff's presence on those lists. Doc. 24 ¶ 20; Doc. 34 ¶ 20. Defendant's report of the HHS List included the following[2]:

///

---

[1] The Court will grant in part Defendant's motion to take judicial notice of the HHS and SAM websites, Doc. 25 at 3 n. 2, consistent with this Order's citation and reasoning. *See generally, e.g.*, https://oig.hhs.gov/exclusions/ (accessed January 12, 2024); https://sam.gov/content/about/this-site (accessed January 12, 2024). Defendant's motion is unopposed, *see generally* Doc. 33, and judicial notice is proper under Rule 201 of the Federal Rules of Evidence and related precedent. *See, e.g.*, *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018) (citation omitted).

[2] These list entries are directly quoted, but the Court reformatted them and removed irrelevant entries for clarity.

| Name: | Tracie Ann Grijalva |
|---|---|
| Charge Filing Date: | None listed |
| Offense Code: | 1128B4 |
| Offense Description: | License revocation or suspension. Minimum period: no less than the period imposed by the state licensing authority. |
| Disposition: | Excluded |
| Disposition Date: | 07/20/2011 |
| Comments: | Provider Type: Nursing Profession<br>Specialty: Nurse/Nurses [sic] Aide |

Doc. 27-5 at 4. Defendant's report of the SAM List included the following:

| Name: | Tracie Ann Grijalva |
|---|---|
| Charge Filing Date: | 7/20/2011 |
| Offense Code: | Z1 |
| Offense Description: | Not provided by source |
| Disposition: | Not provided by source |
| Disposition Date: | None listed |
| Comments: | SAM Number: S4MR3RFBS<br>Creation Date: 07/20/2011<br>Termination Date: Indefinite<br>Classification: Individual<br>Exclusion Program: Reciprocal<br>Exclusion Type: Prohibition/restriction<br>Excluding Agency: HHS<br>Additional Comments: Excluded by [HHS] from participation in all federal health care programs pursuant to 42 U.S.C. 1320A-7 or other sections of the Social Security Act[.] |

Doc. 27-5 at 4. Plaintiff's prospective employer chose not to hire Plaintiff based on Defendant's report. Doc. 27-1 ¶ 13; Doc. 30 ¶ 13. This suit followed. *See* Doc. 1.

Rather than disputing the facts, the parties disagree whether the FCRA permits Defendant to report Plaintiff's presence on the HHS List and SAM List. Doc. 25 at 7; Doc. 27 at 10–11. The parties offer no directly on-point precedent or administrative guidance, and the Court can find none. This appears to be an issue of first impression.

**II.    Motion to Exclude Expert Report (Doc. 35)**

As an initial matter, Plaintiff moves "to exclude the opinion of Jason B. Morris, the expert witness offered by Defendant … [because it presents] a legal conclusion rather than

- 3 -

expert testimony that is designed to assist the trier of fact." Doc. 35 at 1–2.

In a civil case, expert testimony may embrace an ultimate issue if "otherwise admissible." Fed. R. Evid. 704(a). Expert testimony may be "otherwise admissible" if it "help[s] the trier of fact" either "understand the evidence or ... determine a fact in issue." Fed. R. Evid. 702(a). Legal conclusions, by contrast, do not help the trier of fact understand the evidence or determine a fact in issue. *See Mukhtar v. Cal. State. Univ., Hayward*, 299 F.3d 1053, 1066 n.10 (9th Cir. 2002) (overruled on other grounds by *United States v. Bacon*, 979 F.3d 766 (9th Cir. 2020) (quoting *United States v. Duncan*, 42 F.3d 97, 101 (2d Cir. 1994)); *see also Hangarter v. Provident Life & Acc. Ins. Co.*, 373 F.3d 998, 1016 (9th Cir. 2004). But an expert "witness may refer to the law in expressing an opinion without that reference rendering the testimony inadmissible. Indeed, a witness may properly be called upon to aid the jury in understanding the facts in evidence even though reference to those facts is couched in legal terms." *Hangarter*, 373 F.3d at 1017 (quoting *Specht v. Jensen*, 853 F.2d 805, 809 (10th Cir. 1988)). And although experts may not offer legal conclusions, they may testify about industry standards. *King v. GEICO Indem. Co.*, 712 F. App'x 649, 651 (9th Cir. 2017) (citing *Hangarter*, 373 F.3d at 1015).

Although some of Morris's opinions stray into the jury's province, not all are inadmissible. Some are improper legal conclusions. For example, Morris improperly states that ADP's interpretation of § 1681c(a)(5) is "reasonable." Doc. 25-1 at 22, 23, 24, 25. Were a jury required in this case, the jury would decide for itself whether ADP's interpretation was "reasonable," at least for purposes of determining negligence or willfulness. Morris's opinion on reasonableness therefore inappropriately forms a legal conclusion without adding anything that could help a jury make up its own mind. But some of Morris's opinions are proper. For example, Morris observes that ADP's interpretation of § 1681c(a)(5) is standard in the consumer reporting industry. *See* Doc. 25-1 at 24, 25. That could help a jury decide if ADP's actions were objectively unreasonable.

///

///

The Court will deny in part Plaintiff's motion to exclude, consistent with this Order's reasoning and citations. The Court did not rely on Morris's legal conclusions or any other inadmissible aspect of his opinion to reach the decision here.

### III. Cross-Motions for Summary Judgment (Docs. 25, 27)

#### A. Legal Standard

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

#### B. Analysis

To prevail on her FCRA claim, Plaintiff must show (1) Defendant's report violated the FCRA; and (2) Defendant's violation was negligent or willful. *See Marino v. Ocwen Loan Servicing LLC*, 978 F.3d 669, 673 (9th Cir. 2020). In this case the second prong is clearer than the first. *See infra* § III.B(2). But courts are encouraged to develop precedent by considering both prongs whenever possible. *See Marino*, 978 F.3d at 674.

**(1) Defendant did not violate the FCRA because Plaintiff's exclusion from federal healthcare had not ended when Defendant's report issued.**

The Court first determines that Defendant did not violate the FCRA. The FCRA, 15 U.S.C. § 1681, "seeks to protect consumers by limiting the type of information a [consumer reporting agency] may disclose about an individual." *Moran v. Screening Pros, LLC*, 943 F.3d 1175, 1182 (9th Cir. 2019) (citing *Guimond v. Trans Union Credit Info. Co.*, 45 F.3d 1329, 1333 (9th Cir. 1995) ("The legislative history of the FCRA reveals that it was crafted to protect consumers from the transmission of inaccurate information about them, and to establish credit reporting practices that utilize accurate, relevant, and current information in a confidential and responsible manner.")). To that end, § 1681c prohibits consumer reports from containing bankruptcy cases, civil suits or judgments, records of arrest, paid tax liens, or accounts placed in collection that "antedate the report" by a certain amount. *See generally* 15 U.S.C. § 1681c(1)–(4). Section 1681c(a)(5) adds a catchall to this list of prohibited information: "[a]ny other adverse item of information, other than records of

convictions of crimes[,] which antedates the report by more than seven years." *Id.* § 1681c(a)(5). Section 1681c(a)(5) previously specified that the seven-year period ran from the "date of disposition," but that phrase was removed when Congress substantially revised the FCRA in 2010. *Moran*, 943 F.3d at 1182–83. Thus, "[w]hich date triggers the reporting window under § 1681c(a)[(5)] is a matter of statutory interpretation, and [the Court begins] with the plain language of the statute." *Id.* at 1183 (citing *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997)).

Defendant argues that its government registry results comply with the FCRA because Plaintiff's exclusion was "active" or "ongoing." *See, e.g.*, Doc. 25 at 8. Plaintiff disagrees, *see, e.g.*, Doc. 33 at 9, and further argues that Defendant's government registry results violate the FCRA because they include a disposition date and "suggest [or] explicitly mention" that Plaintiff's nursing license was revoked then. Doc. 27 at 12–13. Plaintiff argues that her exclusion is not "active" or "ongoing" because the exclusion is "merely a collateral consequence of her past actions." Doc. 33 at 9. Plaintiff further moves for summary judgment because the "Disposition Date," "Charge Filing Date," and "Creation Date" refer to an adverse action predating Defendant's report by more than 7 years. *See* Doc. 27 at 12. Similarly, Plaintiff moves for summary judgment because the references to "1128B4," "42 U.S.C. § 1320a-7," and the words "License revocation or suspension" imply or state that Plaintiff's exclusion was based on a nursing license revocation predating Defendant's report by more than 7 years. *See id.* at 13.

### i. Defendant permissibly reported the fact of Plaintiff's exclusion.

The plain language of § 1681c(a)(5) permits Defendant to report that Plaintiff was excluded from participating in federal health care programs when Defendant's report issued. Section 1681c(a)(5) prohibits "any adverse item of information" that "antedates the report by more than seven years." Plaintiff argues that the "adverse item of information" at issue is the date and reason she lost her nursing license. In Plaintiff's view, she lost her nursing license in 2011, so the FCRA prohibits Defendant from reporting it in 2020. But Plaintiff systematically ignores the "adverse item of information" Defendant identifies: that

- 6 -

she is currently excluded from participating in federal healthcare programs. That adverse information does not antedate Defendant's report by seven years because Plaintiff was excluded when Defendant's report issued. True, Plaintiff's exclusion was a consequence of her license revocation. But to call it merely a "collateral" consequence suggests it has no independent significance. On the contrary—Plaintiff's exclusion by the HHS Inspector General is what prevents her from participating in federal healthcare programs, not her license revocation.

This interpretation fits comfortably within Ninth Circuit precedent and FTC guidance. The Ninth Circuit recently decided in the context of criminal charges that "[t]he plain language of 'adverse item' suggests that Congress intended the trigger date to begin on the date the adverse event occurred[.]" *Moran*, 943 F.3d at 1185. Where, as here, the "adverse event" is Plaintiff's exclusion from participating in federal healthcare programs, that event "occurs" throughout the exclusionary period. In some cases, the exclusionary period may be defined in months or years. *See, e.g.*, https://oig.hhs.gov/exclusions/reinstatement.asp (accessed January 12, 2024). But in this case the exclusionary period is "indefinite," Doc. 27-5 at 4—i.e., active or ongoing. Defendant may therefore lawfully report Plaintiff's exclusion at any time because it does not antedate the report at all. Defendant could also continue to lawfully report Plaintiff's exclusion for up to seven years after the exclusion terminated.

Federal Trade Commission (FTC) guidance adds support because it treats current, active, or ongoing information in other contexts similarly. The FTC is the agency responsible for enforcing the FCRA. *Moran*, 943 F.3d at 1182–83. The FTC's opinions are not binding on this Court, but nonetheless persuasive. In 1990, the FTC released a report providing its guidance and interpretations of the FCRA. *See FTC, Commentary on the Fair Credit Reporting Act*, 55 Fed. Reg. 18, 804 (May 4, 1990) ("1990 Commentary"). The 1990 Commentary opines that unpaid tax liens may be reported "without limitation" and "as long as they remain filed" and "effective." 55 FR 18804-01, 18818, Section 605(a)(3)-Comment 1; 55 FR 18804-01, 18818, Section 605(a)(6)-Comment 2. The 1990 Commentary also

states that confinement may be reported "until seven years after the confinement is terminated." 16 C.F.R. Part 600, 55 FR 18804-01 (May 4, 1990), Section 605(a)(5)-Comment 2. Similarly, a 1999 FTC Advisory Opinion recommends that an "open warrant" may be reported "regardless of how long it has been outstanding … [i]n the same manner that the CRA may report confinement as long as it continues (and seven years thereafter)[.]" FTC *Advisory Opinion to Holland*, 1999 WL 33932137, at *1 (December 16, 1999). And more recent FTC guidance continues to permit reporting current, active, or ongoing circumstances. In 2011, after Congress substantially amended the FCRA, the FTC issued a new staff report rescinding the 1990 Commentary (the "2011 Report"). *Moran*, 943 F.3d at 1184. The 2011 Report repeats that unpaid liens may be reported while they remain filed and effective, and for seven years from the date they are rendered ineffective. 2011 WL 3020575, at *49–50, Comments 605(a)(3)-1, 605(a)(5)-2 (FTC July 2011).

Plaintiff's exclusion from participating in federal healthcare programs is like an unpaid lien, open warrant, or confinement because all involve periods of time rather than single events. Plaintiff's exclusion began with her license revocation but has not ended. Similarly, unpaid liens, open warrants, and periods of confinement are not single events. They begin with a failure to pay or appear, or an incarceration date. But they subsequently continue, indefinitely or until the debt, appearance, or confinement is satisfied. Under the FTC's interpretation of the FCRA, the relevant date is not the first but the last day of these periods. That makes intuitive sense. Why should a reporting agency not be permitted to report an unpaid lien, for example, just because it has remained unpaid for more than seven years? And even if this case involved statutory ambiguity, Plaintiff's interpretation would be out of line with the FCRA's purpose of reporting "accurate, relevant, and current information." Doc. 27 at 11 (quoting *Cortez v. Trans Union, LLC*, 617 F.3d 688, 706 (3d Cir. 2010)); *see also Moran*, 943 F.3d at 1183 (considering a statute's purpose only when the plain language is ambiguous) (citation omitted). Confinement, for example, continues to be "accurate, relevant, and current" throughout the confinement. The start of the confinement is irrelevant. The end is what matters. Of course, Congress could specify that

the beginning of the period triggers the seven-year window. Similarly, a higher court could interpret the FCRA to require that approach. But absent that guidance, and considering the FTC's well-informed view of similar subjects, the Court is persuaded that Defendant's approach is correct. Irrespective of when Plaintiff's exclusion began, Defendant may report it for seven years after it ends.[3]

### ii. Defendant also permissibly reported the underlying details of Plaintiff's exclusion, which are of a piece with the exclusion itself.

Whether the *reason* for Plaintiff's exclusion is itself a separate adverse item of information is a somewhat closer question. As just discussed, Plaintiff's exclusion may be reported until seven years after it ends. But Plaintiff seeks summary judgment in part because Defendant's report included the date of and references to the revocation of Plaintiff's nursing license. Doc. 27 at 12:9–14; *see also* Doc. 33 at 5–6 ("Even assuming … that a disclosure of the fact of the current state of exclusion is permissible, Defendant's disclosure of the underlying basis of the exclusion … is a clear violation of the FCRA."). Defendant's HHS List result referred to the "Disposition Date" as "7/20/2011." Doc. 27-5 at 4. Similarly, the SAM List result refers to "7/20/2011" as a "Charge Filing Date" and a "Creation Date." *Id.* Both list results also refer with varying specificity to the statutory basis for Plaintiff's exclusion. The HHS List result refers to an "Offense Code" of "1128B4," which in turn refers to the Social Security Act Section 1128(b)(4), codified at 42 U.S.C. § 1320a-7(b)(4). *See id.* The SAM List also refers to Plaintiff's exclusion as "pursuant to 42 U.S.C. § 1320a-7 or other sections of the Social Security Act." *Id.* Finally, the HHS List specifically provides the section subtitle of § 1320a-7(b)(4): "License revocation or suspension." *Id.*

---

[3] Plaintiff tries to distinguish unpaid liens, open warrants, and confinement as involving "failure to fulfill an ongoing duty or obligation." Doc. 33 at 9–10. That is unpersuasive. Confinement does not seem to fit that definition, at least. But even if it did, what causes these periods is irrelevant to whether the beginning or end triggers the FCRA's seven-year window. Whatever their cause, unpaid liens, open warrants, and confinement are current until they conclude. That is why their end triggers the seven-year window, not their beginning. Exclusionary periods are similar.

1    Plaintiff cites only two cases to support drawing a distinction between her exclusion
2    and its cause. The first is *Serrano v. Sterling Testing Systems, Inc.*, 557 F. Supp. 2d 688,
3    692–93 (E.D. Pa. 2008). In *Serrano*, the court determined that "the plain language of the
4    [FCRA] prohibits disclosure of the *existence* of arrest records" after seven years, not merely
5    the record itself. *Id.* at 689 (emphasis added). The court first looked to § 1681c(a)(2), which
6    prohibits reports of "records of arrest" that are more than seven years old. *Id.* at 690–92.
7    Drawing on FTC guidance, the court observed that "records" could include "any
8    information … relating to arrest," which "strongly suggest[s] that merely reporting or
9    disclosing—without producing—obsolete information violates the FCRA." *Id.* at 691.
10   Without deciding under § 1681c(a)(2), the court concluded that even if the bare fact of the
11   arrest's existence avoided § 1681c(a)(2), it "inescapably f[ell] within the general catchall
12   provision[ of] § 1681c(a)(5)." *Id.* at 691–92.

13   Plaintiff's second case is *Moran*, 943 F.3d at 1175. In *Moran*, the plaintiff had been
14   charged with a misdemeanor in 2000, but that charge was then dismissed in 2004. *Id.* at
15   1178. In 2010, ten years after the charge but six years after the dismissal, the defendant
16   reporting agency disclosed the charge to a prospective landlord. *Id.* The court held that the
17   defendant's disclosure violated the FCRA because "the date of entry triggers the seven-
18   year window for a criminal charge[, not the date of dismissal]." *See id.* at 1182, 1186. The
19   court "additionally [held] that the dismissal of a charge does not constitute an independent
20   adverse item[.]" *Id.* at 1186. The court reasoned that a dismissal is not adverse because it
21   "indicates that the consumer no longer faces an indictment, an overall positive—but at least
22   neutral—development." *Id.* at 1184.  "Both events [the charge and the dismissal] must be
23   considered as part of the same criminal record and neither may be reported after seven
24   years from the 'adverse item,' the charge." *Id.* The court concluded that reporting the
25   dismissal of an obsolete criminal charge—though not itself adverse—nonetheless
26   unlawfully "discloses the previous adverse event, i.e., the charge." *Id.* at 1184.

27   Plaintiff's cases do not support a distinction between her exclusion from federal
28   healthcare programs and the reason for her exclusion. Neither case discussed that

- 10 -

distinction. Both just reasonably observed that obsolete adverse information may not be reported directly or indirectly. But does the cause of Plaintiff's exclusion become obsolete after seven years even though the exclusion itself may not? Plaintiff's cases do not answer that question. Unfortunately, neither do Defendant's arguments. *See generally* Doc. 31 at 9–12 and Doc. 41 at 8–11. For example, referring again to the 1999 FTC Advisory Opinion about confinement, Defendant points out that "a warrant can be reported … as long as it remains open." Doc. 31 at 11 and Doc. 41 at 9–10. But does "reporting a warrant" include reporting the details underlying the warrant or just the fact of it? Or does "reporting a warrant" mean providing a copy of the warrant document itself? Defendant does not develop its arguments to answer that question. And asserting without explanation that "Defendant is not conveying an independent piece of adverse information" does not articulate *why* the cause of Plaintiff's exclusion is "directly tied" to the exclusion rather than "independent" of it. Doc. 31 at 10.

Ultimately, though, and despite some superficial appeal, Plaintiff's interpretation is flawed. Plaintiff is correct that the plain language of § 1681c(a)(5) prohibits "any" adverse item of information. And a nursing license revocation could be "an" adverse item of information in another context. But even under Plaintiff's interpretation, the SAM List result evades liability. It provides a "charge filing date" that is the same as the "creation" date, and the statutory code reference is critically vague, referring to "42 U.S.C. 1320A-7 or other sections of the Social Security Act." That is not enough information for a reader to infer "an" adverse item of information, only the bare fact that some adverse item exists. If Plaintiff's objection were to the details rather than the fact, then the SAM List is not detailed enough to sustain that objection. The HHS List is similarly free of specific adverse information except for its use of the words "License revocation or suspension." But the Court sets these distinctions to one side because Plaintiff's interpretation is flawed in more fundamental ways.

First, nothing in the FCRA's plain language, in precedent, or in FTC guidance requires or even suggests a distinction between the fact of an adverse item of information

and its underlying details. The FCRA expressly contemplates that reporting agencies serve a "vital role" by collecting and transmitting public records, and exempts only records that are somehow inaccurate, irrelevant, or obsolete. *See generally* 15 U.S.C. § 1681; *Guimond*, 45 F.3d at 1333. The FCRA does not, for example, permit the collection of accurate, relevant, and current public records but generally prohibit transmission of certain aspects of them. Unsurprisingly, then, the subsections preceding § 1681c(a)(5) do not delineate between permissible and impermissible details within public records. Instead, sections 1681c(a)(1)–(4) prohibit "the following items of information": obsolete bankruptcy "cases"; "civil suits, civil judgments, and records of arrest"; "paid tax liens"; and "accounts placed for collection." They do not, for example, permit reporting only the caption of a civil suit, or prohibit reporting the charges underlying an arrest. Note also that the statute refers to "cases," "suits," "records," "paid tax liens," and "accounts placed for collection" as "items of information." Following these subsections, § 1681c(a)(5) uses a catchall phrase: "any *other* adverse item of information." In that construction, "other" refers to the preceding "items of information," which are all public records; if § 1681c(a)(5) were independent of the preceding subsections, it would have just said "any adverse item." That relationship is significant because the preceding subsections narrow § 1681c(a)(5)'s application to like kinds of adverse information as those contained in the other subsections. *See generally, e.g.*, Scalia & Garner, Reading Law: An Interpretation of Legal Texts (2012), at 199 ("Where general words follow an enumeration of two or more things, they apply only to persons or things of the same general kind or class specifically mentioned (*ejusdem generis*)."). The preceding subsections are all public records, and none distinguish between the fact of the record and the record itself. Because the preceding subsections do not support Plaintiff's distinction, neither can § 1681c(a)(5).

*Serrano* and *Moran* likewise do not distinguish between the fact of an adverse item and its details. *Serrano* even speculated that a "record of arrest" includes both the record itself and the fact of the record's existence. But the basis of *Serrano*'s decision was a common-sense observation that if the arrest record is prohibited by § 1681c(a)(2), the fact

of that arrest is also prohibited at least by § 1681c(a)(5). That is different from the proposition that § 1681c(a)(5) prohibits information that would otherwise be permissible under one of the preceding subsections. At least where all information in the record is germane to that record, no precedent requires an analysis under both subsections. *Moran* certainly does not. It held only that a dismissal of a criminal charge does not revive the seven-year window for the underlying charge. No contortion of that holding suggests that § 1681c(a)(5) applies to otherwise permissible public records.

Neither does FTC guidance. The 2011 Report, like *Moran*, advises that "[e]ven if no specific adverse item is reported, a [reporting agency] may not furnish a consumer report referencing the existence of adverse information that predates the times set forth in this subsection." 2011 WL 3020575, at *48. That simply prohibits indirectly reporting obsolete information. Like the FCRA, the 2011 report uses "information" and "records" interchangeably.

> Section [1681c(a)] imposes time limitations on reporting of adverse *information* by CRAs. The reporting of *bankruptcies* is governed by subsection (a)(1). The reporting of *accounts* placed for collection or charged to profit and loss is governed by subsection (a)(4). The reporting of other delinquent *accounts* is governed by subsection (a)(5). *Any such item*, even if discharged in bankruptcy, may be reported separately for the applicable seven year period, while the existence of the bankruptcy filing may be reported for ten years.

2011 WL 3020575, at *49. Similarly, the 1999 Advisory Opinion repeatedly refers to "items of public record," and "items of (public record) information." 1999 WL 33932137, at *1. That is consonant with a reading of the § 1681c(a)(5) catchall that narrows the meaning of "any item" to "any public record like the preceding records." And nothing in the 2011 Report or 1999 Advisory Opinion suggest some details in a record are permitted but others are not.

Finally, adopting Plaintiff's approach produces absurd results. The bare fact of Plaintiff's presence on the HHS List and SAM List implies that she did something wrong to get on that list. Under Plaintiff's interpretation, that mere "suggestion" of wrongdoing—of any kind, no matter how vague—could violate the FCRA if the wrongdoing antedates

the report by more than seven years. Paradoxically, that would be true even if, as the Court just decided, *infra* § III.B.1, the fact of Plaintiff's exclusion was not obsolete. Plaintiff's reading of § 1681c(a)(5) would permit the fact of her exclusion because that fact is not obsolete, but also prohibit the fact of her exclusion because that fact implies another, obsolete fact. Plaintiff's rule also applies indiscriminately to the vague suggestion of wrongdoing, the date Plaintiff lost her license, the "code" "1128B4," the more specific "42 U.S.C. § 1320a-7," and the comment "License revocation or suspension." That is odd. It would make more sense at least to distinguish between "dry" statutory code references and "juicy" comments like "license revocation." But even if Plaintiff's rule encompassed that distinction, the Court would not be persuaded. The phrase "license revocation or suspension" is just the statutory subsection title. Reporting it saves the reader a minor step, nothing more.

The incidental details of Plaintiff's exclusion—the date it began and the statute code and subsection title—are part and parcel with the exclusion itself. Together they form a public record. Defendant may lawfully report that record. For those reasons, Defendant's report did not violate the FCRA, and the Court will grant its motion for summary judgment and deny Plaintiff's motion for partial summary judgment.

### (2) Defendant also did not violate the FCRA negligently or willfully because its interpretation of the FCRA is not objectively unreasonable.

Even if Defendant had violated the FCRA, Defendant would be immune from liability because its interpretation of the FCRA is not objectively unreasonable.

> [A] consumer may succeed on a claim under the FCRA only if he or she shows that the defendant's violation was negligent or willful. To prove a negligent violation, a plaintiff must show that the defendant acted pursuant to an objectively unreasonable interpretation of the statute. To prove a willful violation, a plaintiff must show not only that the defendant's interpretation was objectively unreasonable, but also that the defendant ran a risk of violating the statute that was substantially greater than the risk associated with a reading that was merely careless. Under either the negligence or willfulness standard, when the applicable language of the FCRA is "less than pellucid," a defendant will nearly always avoid liability so long as an appellate court has not already interpreted that language. Thus, in nearly

every case involving unclear statutory language, an appellate court may dispose of the appeal by concluding that the defendant did not negligently or willfully violate the statute.

*Marino*, 978 F.3d at 673–74 (citations omitted); *accord Moran v. Screening Pros, LLC*, 25 F.4th 722, 730 (9th Cir. 2022) (affirming summary judgment because defendant's interpretation was not objectively unreasonable). Although willfulness may be a question of fact, *Ashby v. Farmers Ins. Co.*, 565 F. Supp. 2d 1188, 1206 (D. Or. 2008) (collecting cases), whether a legal interpretation is objectively unreasonable is a matter of law. *Id.* at 1205. If a court determines an interpretation is "objectively reasonable as a matter of law, the case ends." *Id.*

Here, Defendant's interpretation of the FCRA was objectively reasonable, not objectively unreasonable. As discussed above, Defendant's interpretation does not violate any precedent or the plain language of the FCRA. Plaintiff's exclusion did not antedate Defendant's report at all, much less by seven years. Even if § 1681c(a)(5) were ambiguous—and it is "less than pellucid" if only because it does not specify the relevant date for exclusionary periods like unpaid liens, etc.—Defendant's interpretation modestly extends FTC guidance. Plaintiff's exclusion is a period rather than an event. Thus, the FTC guidance concerning periods is highly relevant and reasonable to apply. Defendant's interpretation also comports with the animating spirit of the FCRA to provide "accurate, relevant, and current" information. And Defendant's interpretation is a standard interpretation within Defendant's industry. *See* Doc. 25-1 at 25. For all those reasons, Defendant's interpretation of the FCRA was objectively reasonable, not objectively unreasonable. Defendant therefore cannot be liable for a negligent or reckless violation of the FCRA.

Defendant also is not liable for a knowing violation of the FCRA. First, Plaintiff presents no evidence that Defendant knew they were violating the FCRA. *See generally* Doc. 27-1. Instead, her statement of facts merely recites uncontroversial aspects such as what Defendant did, and that Defendant decided *Moran* was inapplicable. *Id.* at 5. Similarly, Plaintiff does not move for partial summary judgment by explicitly arguing that

Defendant knowingly violated the FCRA. *See generally* Doc. 27. Instead, she argues that Defendant was "well aware" of *Moran* and Ninth Circuit precedent requiring "that any reading of the [FCRA] must favor the consumer." *Id.* at 16–17. Plaintiff also argues:

> Defendant both knew of the standard as articulated by federal courts, and despite clear language in the statute, it chose to interpret the FCRA in a way to make money for itself by reporting obsolete license revocation information in violation of the FCRA.

Doc. 33 at 13–14. And Plaintiff argues that "Defendant expressly denies the relevance or applicability of the purpose of the FCRA" as described by the Third Circuit and a Washington district court. *Id.* at 14–15. Essentially, Plaintiff implies that Defendant had to know it was violating the FCRA because the law and its application here is "crystal clear." *Id.* at 8. The Court disagrees. As shown above, the questions Defendant's actions raised were not simple or easily answered. Even if Plaintiff had adequately alleged that Defendant's violation was knowing, the Court would not be persuaded because it agrees with Defendant's interpretation of *Moran* and relevant FTC guidance. Because any hypothetical violation of the FCRA was not knowing, reckless, or negligent, Defendant cannot be liable to Plaintiff.

For these reasons, Defendant is entitled to summary judgment.

**IV.   Order**

Accordingly,

**IT IS ORDERED GRANTING** Defendant's Motion for Summary Judgment (Doc. 25). The Clerk of the Court shall enter judgment accordingly.

**IT IS FURTHER ORDERED GRANTING IN PART** Defendant's motion for judicial notice (Doc. 25 at 3 n. 2), consistent with this Order's citations and reasoning.

**IT IS FURTHER ORDERED DENYING** Plaintiff's Partial Motion for Summary Judgment (Doc. 27).

**IT IS FURTHER ORDERED DENYING AS MOOT** Plaintiff's Motion to Certify Class (Doc. 26).

///

**IT IS FURTHER ORDERED DENYING IN PART** Plaintiff's Motion to Exclude (Doc. 35), consistent with this Order's citations and reasoning.

Dated this 22nd day of February, 2024.

John C. Hinderaker
United States District Judge